Honorable John M. Prenderville, Chairman Division of State Athletic Commission
Your counsel has asked whether physicians designated by the New York State Athletic Commission to perform services in relation to boxing and wrestling matches conducted in the State are employees of the State under section 17 of the Public Officers Law entitled to defense and indemnification in accordance with the provisions of the section.
Section 17 of the Public Officers Law provides for the defense of an employee of the State in any civil action or proceeding arising out of any alleged act or omission occurring while the employee was acting within the scope of his duties (§ 17[2][a]). The State must indemnify its employees for any liability as a result of such an action (id.,
§ 17[3][a]). An "employee" is defined as any person holding a position by election, appointment, or employment in the service of the State, whether or not compensated, or a volunteer expressly authorized to participate in a State-sponsored volunteer program (id., § 17[1][a]).
All boxing, sparring and wrestling matches conducted in the State are subject to strict regulation (McKinney's Unconsolidated Laws, § 8905). The New York State Athletic Commission ("Commission") has sole management, control and jurisdiction over these matches (id., § 8906). The Commission has licensing authority over promoters and participants in such matches (ibid.). All boxers must be examined by a physician designated by the Commission before entering the ring and a report of the examination must be filed immediately with the Commission (id., § 8925). The time, contents and forms for the various examinations have been prescribed by the Commission (19 NYCRR, §§ 209.1, 209.2, 209.3 and 209.15). Every corporation conducting a boxing or sparring match or exhibition must have in attendance at the time of the match a physician designated by the Commission (id., § 8926). The ringside physician is required to advise the representative of the Commission present at the boxing but whether any contestant has received severe punishment or is in danger of serious physical injury (19 NYCRR, § 209.5). He is also responsible for rendering any necessary emergency medical treatment (ibid.). The promoters of boxing and wrestling matches must provide medical facilities and equipment in accordance with Commission specifications and approved in advance by the Commission (19 NYCRR, § 215.7). The costs of these medical services are paid by the promoter (id., §§ 8925 and 8926). A Medical Advisory Board has been established in the Commission and is responsible for recommending qualified physicians to conduct physical examinations of professional boxers and wrestlers (id., § 8904).
Your counsel's letter refers to a Court of Appeals decision dealing with the question of State negligence for the acts of panel physicians of the Commission (Rosensweig v State of New York, 5 N.Y.2d 404 [1959]). It was alleged in this wrongful death action that the State was negligent in licensing a fighter when it knew or should have known that he was not in proper physical condition to fight (id., p 406). The fighter had been examined prior to each of his final three fights by physicians selected by the corporation promoting the fights from a panel established by the Medical Advisory Board of the Commission (id., p 407).
The Court concluded that the doctors were not employees of the State whose negligence could be imputed to the State (id., p 408). Despite the State's broad waiver of sovereign immunity, "it is essential, at the very least, that the person for whose negligent conduct the State is sought to be charged be engaged in its service" (id., p 409). The Court went on to describe the objectives of the legislation creating the Commission as a scheme to legalize boxing under strict government control (id., pp 409-410). The statutory provisions examined by the Court (id., p 410) are fundamentally the same as current provisions. At the time of the fight inRosensweig, the statute provided that "All boxers must be examined by a physician designated by the Commission before entering the ring" (L 1948, ch 754, § 5 — compare with McKinney's Unconsolidated Laws, § 8925). "It shall be the duty of every corporation, at its own expense, to have in attendance at every boxing or sparring match or exhibition, a physician designated by the commission as the rules shall provide" (L 1948, ch 754, § 3 — compare with McKinney's Unconsolidated Laws, § 8926). As under present law, doctors were selected from a list compiled by the Commission's Medical Advisory Board, which also recommended fees of doctors to be paid by the promoters, and submitted to the Commission proposed regulations to safeguard the physical welfare of boxers and wrestlers (L 1948, ch 754, § 2 — compare with McKinney's Unconsolidated Laws, § 8904).
The Court of Appeals concluded that the statutes requiring the promoters to employ physicians from the approved panel was "only the customary exercise of the police power in the regulation of a permitted subject", not unlike the licensing of other medical specialists (id., p 411). The requirement of a license and the establishment of fee schedules do not make the State the employer of the regulated trade or profession (ibid.). "Regulation, no matter how close or stringent, is not thereby transmuted into government operation" (ibid.).
It is suggested by your counsel that panel physicians are under greater supervision and regulation today than at the time of Rosensweig. The statutory provisions examined in Rosensweig are fundamentally the same today. A comparison of the rules of the Commission at the time of the fight in Rosensweig with today's rules indicates few additional health and safety rules since 1951, and that the balance of the health and safety rules are fundamentally the same (compare current 19 NYCRR, § 209.1 with Department of State, Division of State Athletic Commission, General Rules and Regulations, adopted August 5, 1949 and filed April 10, 1950, § 1: § 209.2 with § 2; § 209.3 with § 2[b]; § 209.5 with § 2[d][1]; § 209.6 with § 2[c][2] and [3]; § 209.8 with § 2[d][2]; § 209.9 with § 4[c]; § 209.10 with § 4[d]; § 209.13 with § 2[d][1]; § 209.14 with § 2[c][1]; § 209.15 with § 4[a]). In Rosensweig the facts indicate that the physicians were selected from the approved panel by the promoter (id., p 407). Your counsel states that under current procedure, the Commission designates physicians from the panel to perform required medical services. This difference does not in our opinion place today's panel physicians in the service of the State. Both current statutory provisions and those in effect at the time of the fight inRosensweig provide for boxers to be examined "by a physician designated by the commission before entering the ring" (McKinney's Unconsolidated Law, § 8925; L 1948, ch 754, § 5). Thus, it cannot be said that there has occurred a change in statutory intent. In any event, we do not believe that greater regulation makes the physicians employees of the State. The Court of Appeals in Rosensweig found that no matter how stringent the requirements, the scheme embodied in the statute was solely a regulatory measure and did not constitute a government operation (id.,
p 412). We have found nothing in the present statute or rules to change the basis for this finding. The fact that today there are a few more requirements is, under the Rosensweig decision, simply more regulation, not State operation and employment.
Nor do we view the adoption of section 17 of the Public Officers Law after Rosensweig as requiring a different outcome. The test enunciated in Rosensweig is that the person for whose negligent conduct the State is sought to be charged must be engaged in its service (id., p 409). Under section 17 an "employee" is one holding a position by election, appointment or employment "in the service of the state" (§ 17[1][a]). The standards for section 17 coverage are not unlike those applied in Rosensweig.
We note that the question of who compensates the person is not determinative of employment (id., p 416 — dissenting opinion). Although the indicia of employment are the power to hire and fire, the payment of salary and the power to control the employee, only the last one is essential to a finding of employment (Hardy v Murphy, 29 A.D.2d 1038
[3d Dept, 1968]; 1979 Op Atty Gen 57). The State's limited control over panel physicians is not, however, an indication of employment but is rather an incident of strict regulation.
We conclude that panel physicians of the New York State Athletic Commission are not employees of the State entitled to defense and indemnification under section 17 of the Public Officers Law.